**Gerald LEVINE, individually and on behalf of others similarly situated, Plaintiff,**

v.

**Lane BRYANT, Defendant.**

**No. 85 C 3607.**

United States District Court,
N.D. Illinois, E.D.

Nov. 18, 1988.

Judson H. Miner, Paul Strauss, Charles Barnhill Jr., Davis Miner Barnhill & Galland, Chicago, Ill., for plaintiff.

Stephen G. Seliger, Steven L. Loren, Richard L. Marcus, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634

(1982 & Supp. IV 1986) ("the ADEA"), the plaintiff Gerald Levine alleges that the defendant Lane Bryant fired him because of his age. Levine has sought to prosecute his suit as a representative action, the ADEA version of a class action, and has previously sent notices to other similarly situated former Lane Bryant employees. A number of such former employees decided to "opt into" Levine's suit, but at this point only four opt-in plaintiffs remain. In the motion that we consider in this opinion, Lane Bryant argues that we should strike the notices of consent to suit given by these four opt-in plaintiffs. For the reasons set forth below, Lane Bryant's motion is denied.

## I. Factual Background

On April 15, 1983, Levine was fired from his job as Vice President and Regional Manager of the Midwest Division of Lane Bryant. At the time, Levine had worked for Lane Bryant for approximately thirty-six years and was fifty-two years old. On May 24, 1983, Levine brought a charge of discrimination against Lane Bryant before the Equal Employment Opportunity Commission ("EEOC"). In his charge, Levine alleged that Lane Bryant fired him because of his age, and that he would be replaced by a younger person. In addition, he stated:

> III. I believe I have been discriminated against because of my Age 52 in that:
>
> *  *  *  *  *  *
>
> C. Respondent [Lane Bryant] has made statements that they want "new blood" in management. Since the new management started many employees over 50 years old in managerial positions have been discharged throughout the Country. All have been replaced by younger employees in the age group 20's and 30's.

The new management that Levine referred to in his charge was The Limited, Inc., which purchased Lane Bryant in May 1982.

The EEOC apparently attempted to conciliate Levine's charge against Lane Bryant, although with no results, and completed its investigation of the charge in September 1983. On April 12, 1985, Levine filed this suit, in which he again alleged that his firing from Lane Bryant violated the ADEA. The suit, brought by Levine "individually and on behalf of others similarly situated," was originally assigned to Senior Judge Bernard M. Decker. In November 1985, Levine submitted a proposed class notice to be sent to the others similarly situated. Lane Bryant objected to the proposed notice, and, after extensive (if not excessive) briefing, Judge Decker permitted a notice to go out to certain former Lane Bryant employees in September 1986.

In response to this notice, a number of former Lane Bryant employees sent notices consenting to join or "opt into" Levine's suit.[1] Most of these opt-in plaintiffs were dismissed for want of prosecution, a couple were found not to belong to the defined class and one settled with Lane Bryant. Only four opt-in plaintiffs now remain: Betty Bryant, Barbara Cleland, Martin Gluck and Pauline Goldstein. The dates that they left Lane Bryant and the dates of their opt-in notices are listed below:

|  | Date of Separation | Opt–In Date |
| --- | --- | --- |
| Betty Bryant | February 12, 1983 | November 19, 1986 |
| Barbara Cleland | September 3, 1983 | November 25, 1986 |
| Martin Gluck | August 20, 1982 | November 25, 1986 |
| Pauline Goldstein | February 12, 1983 | December 2, 1986 |

Lane Bryant moved to strike the notices of consent of the opt-in plaintiffs on two grounds. First, Lane Bryant asserts that the consents were filed after the statute of limitations had run, and thus the opt-ins are barred from pursuing the suit. Second,

---

**1.** A plaintiff must opt into an ADEA representative suit. This procedure should be contrasted with the procedure for class actions outlined in Rule 23 of the Federal Rules of Civil Procedure. Under Rule 23, a plaintiff belonging to a class must opt out of a class action; otherwise, he or she will be bound by the decision in the case.

Lane Bryant argues that the four new plaintiffs cannot opt into Levine's suit because they never filed age discrimination charges with the EEOC. The opt-ins respond that the statute of limitations was tolled when Levine first brought his suit against Lane Bryant, and that the opt-ins may "piggyback" onto the charge which Levine filed with the EEOC.

After the issues were briefed, this Court stayed further proceedings in the case pending the Seventh Circuit's decision in *Anderson v. Montgomery Ward & Co.,* 852 F.2d 1008 (7th Cir.1988). The Seventh Circuit decided that case on July 15, 1988, and the parties subsequently rebriefed the issues raised by Lane Bryant's motion to strike the notices of consent.

## II. The Timeliness of the Opt–In Consents

The ADEA does not have its own statute of limitations. Rather, 29 U.S.C. § 626(e)(1) provides that 29 U.S.C. § 255 shall apply to ADEA actions. In turn, Section 255 provides in pertinent part:

Any action ... to enforce any cause of action ...

(a) ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255 (1982). It is clear that Levine met the requirement of section 255, since he was fired on April 15, 1983, and he brought this suit within two years, on April 12, 1985.

What is less clear is the timeliness of the remaining opt-in plaintiffs. All four opted in more than three years after they were fired and thus outside the limit provided by section 255. The opt-ins contend, however, that for purposes of the statute of limitations, their suits commenced at the time that Levine brought his suit against Lane Bryant. This result would certainly be the correct one if this were a class action under Rule 23 of the Federal Rules of Civil Proce-

dure. The Supreme Court has held that under Rule 23, commencement of a class action tolls the applicable statute of limitations as to all members of the class. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 2152 n. 13, 40 L.Ed.2d 732 (1974); *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974).

However, this suit is not a class action under Rule 23, but rather, a representative action under the ADEA, and Lane Bryant contends that Congress intended a different tolling rule to apply. Specifically, Lane Bryant argues that 29 U.S.C. § 256 bars any recovery. Section 256 provides in pertinent part:

In determining when an action is commenced for the purposes of section 255 of this title, an action ... shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon–Davis Act, it shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complant is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (1982). Lane Bryant contends that in an ADEA representative suit, the statute of limitations is tolled only when a party consents to suit. Since the opt-ins did not consent to suit until after the statute of limitations had run, Lane Bryant argues, they should not be allowed to participate in Levine's suit.

■ Lane Bryant concedes, as it must, that the ADEA does not specifically adopt section 256, and that section 256 does not

specifically mention the ADEA, but argues nonetheless that Congress intended for section 256 to apply to the ADEA. Lane Bryant notes that section 256 provides the definition of "commenced" in section 255. Since the ADEA explicitly incorporates section 255, *see* 29 U.S.C. § 626(e)(1), and since, according to Lane Bryant, section 255 cannot be understood without reference to section 256, Congress must have intended for section 256 to apply. In addition, Lane Bryant correctly notes that the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982 & Supp. IV 1986) ("the FLSA"), as amended by the Portal–to–Portal Pay Act, 29 U.S.C. §§ 251–262 (1982) ("the PPA"), provided the model for the procedural and remedial aspects of the ADEA. *See* H.R.Rep. No. 805, 90th Cong., 1st Sess., *reprinted in* 1967 U.S. Code Cong. & Admin. News 2213, 2218 ("The investigation and enforcement provisions of the [ADEA] essentially follow those of the Fair Labor Standards Act."); *see also Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978); *Anderson v. Montgomery Ward & Co.,* 852 F.2d 1008, 1014 (7th Cir.1988). Since section 256 was one of the PPA amendments to the FLSA, Lane Bryant argues that it should be read into the ADEA and bar the opt-ins in this case.

We cannot agree. Although the FLSA was the model for the ADEA, and although much of the former is incorporated in the latter, Congress did not adopt all of the FLSA in the ADEA. As the Supreme Court has noted, "[I]n enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Lorillard,* 434 U.S. at 581, 98 S.Ct. at 870. In light of Congress' selectivity, we conclude that since section 256 was not specifically incorporated, Congress did not intend for it to be part of the ADEA.

What little light the legislative history provides support for our conclusion. Senator Jacob Javits, one of the floor managers of the ADEA, emphasized the Act's similarity to the FLSA, but was sure to qualify his statement to indicate that the two Acts were not the same: "[The ADEA] incorporates by reference, *to the greatest extent possible,* the provisions of the Fair Labor Standards Act." 113 Cong.Rec. 31,254 (1967) (remarks of Sen. Javits) (emphasis added). Moreover, Senator Javits had previously introduced a bill that would have made discrimination based on age unlawful under the FLSA and thus would have adopted all of the FLSA enforcement mechanisms, including section 256. S. 788, 90th Cong., 1st Sess. (1967), *reprinted in* 113 Cong.Rec. 2199 (1967). Congress did not adopt this bill, however, but chose to enact the more selective ADEA, which did not incorporate section 256. Accordingly, we conclude that section 256 is not part of the ADEA.

Lane Bryant advances a number of arguments to support the opposite conclusion. We reject them all. First, Lane Bryant contends that the tolling scheme of section 256 is impliedly contained in 29 U.S.C. § 216(b) (1982),[2] which creates the opt-in procedure and which is explicitly incorporated in the ADEA, *see* 29 U.S.C. § 626(b) (1982). To support its argument, Lane Bryant relies on passages from the legislative history of the PPA, which amended section 216(b). We question whether it is appropriate to consider the legislative history of the PPA in interpreting the ADEA, but even if it is, the passages that Lane Bryant relies on are taken out of context and refer to a Senate version of the PPA that was not enacted into law. For example, Lane Bryant quotes the following statement of Senator Forrest Donnell, one of the leading proponents of the PPA:

So it will not be possible for 10,000 men to wait 3 years, with the employers not knowing how many thousands of dollars or millions of dollars, perhaps, of claims will be asserted against them, and

---

**2.** Section 216(b) provides in pertinent part:
No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

then come forward—3 years later—after they would normally have been barred by limitation, and insist upon recovery. If the statute of limitations shall have run against any given individual, under the bill as we have drawn it, and if he fails to file suit before the statute shall have operated against him, he will be barred.

93 Cong.Rec. 2182 (1947) (remarks of Sen. Donnell). Senator Donnell's remarks seem to support Lane Bryant's contention that the statute of limitations is tolled only when a party consents to suit. Senator Donnell, however, was not referring to the final version of the PPA. Rather, he was referring to the Senate version of the Act, and in particular to the following provision, which he read immediately before the previous quote:

> [S]uch action shall be deemed to have been commenced as to any individual claimant as of the date when such claimant is named in such action as a party thereto.

Section 8(a) of the Senate version would have made the foregoing provision part of section 216(b). *See* 93 Cong.Rec. 2376 (1947). But the Conference Committee deleted this provision from the bill, *see* 93 Cong.Rec. 4211 (1947), and it was not enacted into law. *See* Portal–to–Portal Act, ch. 52, § 5(a), 61 Stat. 87 (1947).[3]

Lane Bryant made a similar error when it cites a Senate Report prepared by the Judiciary Committee to accompany the version of the PPA that it reported out of committee. S.Rep. No. 48, 80th Cong., 1st Sess. (1947). In referring to section 8(a), the Report stated that "as to any individual claimant named in any such collective action, the action is deemed to be commenced as to him when he is named a party thereto." *Id.* at 4a. The Committee version of the PPA was essentially adopted by the Senate, but as described above, the Senate's version was not enacted into law.

The Senate Report therefore provides no backing for Lane Bryant's position.

Lane Bryant also argues that even if the ADEA does not incorporate section 256, it does not therefore incorporate the tolling rule applicable to class actions under Rule 23. As noted previously, in a Rule 23 action, the statute of limitations is considered tolled when the plaintiff brings the class action. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Lane Bryant contends that the *American Pipe* rule is intrinsically related to the opt-out procedures found in Rule 23, and that the rule cannot be applied to the opt-in procedures under the ADEA.

It is apparent that this argument is closely related to Lane Bryant's previous argument, that an opt-in procedure necessarily mandates the tolling rule found in section 256. We reject Lane Bryant's latter argument as well. As our previous discussion makes clear, Congress did not intend for section 256 to apply to the ADEA. Congress did not indicate what tolling rule it intended in section 256's stead, but in light of Congress' silence, it is appropriate to apply the *American Pipe* rule, since this rule would apply to all other class actions in the absence of statutory provisions to the contrary. In short, we agree with the opt-in plaintiffs that the *American Pipe* rule is the "normal" rule, and that it should apply to this case.

Finally, Lane Bryant argues that section 216(c) supports its argument. The final sentence of section 216(c) reads:

> In determining when an action is commenced by the [EEOC] under this subsection for the purposes of the statutes of limitations provided in section 255(a) of this title, it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a

---

**3.** A somewhat similar provision did become part of 29 U.S.C. § 257 (1982). Section 257 reads in pertinent part:

> [S]uch action shall be considered to have been commenced as to him when, and only when, his written consent to become a party plaintiff

to the action is filed in the court in which the action was brought.

Section 257, which applies only to collective actions brought before the effective date of the PPA, clearly does not apply to the ADEA, which was enacted twenty years later.

party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

29 U.S.C. § 216(c) (1982). The last sentence clearly parallels the provisions of section 256; thus, when the EEOC brings an action under the ADEA, a party must be named as a plaintiff within the statute of limitations or be barred from obtaining relief. Lane Bryant argues that an anomaly would be created if section 256 does not apply to private ADEA actions under 216(b). On the one hand, in an EEOC action under the ADEA, the statute of limitations is tolled with respect to a party only when that party is named as a plaintiff; on the other hand, in a private ADEA action, the statute of limitations is tolled when the original plaintiff first brings suit. Lane Bryant argues that Congress would not have intended this anomaly, so it must have intended section 256 to apply to private ADEA actions. We recognize this apparent anomaly, but in light of the other evidence indicating Congress did not intend to include section 256 in the ADEA, we are unwilling to correct it.

We note that the other courts which have considered the applicability of section 256 to the ADEA have split on the issue. The Eighth Circuit has held that section 256 does apply to ADEA actions. *O'Connell v. Champion International Corp.*, 812 F.2d 393, 394 (8th Cir.1987). On the other hand, the Sixth Circuit and courts from the Eastern District of Pennsylvania and the Northern District of Georgia have held or stated that it does not apply. *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Vivone v. Acme Markets, Inc.*, 687 F.Supp. 168 (E.D.Pa.1988); *Blankenship v. Ralston Purina Co.*, 62 F.R.D. 35, 39 n. 2 (N.D.Ga.1973). However, we do not find any of these cases very helpful. The *O'Connell* case merely refers to the reasoning of the opinion of the lower court in the case. The district court, in turn, merely cites FLSA cases for its conclusion that the statute of limitations is tolled when a plaintiff opts in; it does not consider whether the result should be different under the ADEA. *See McKenna v. Champion International Corp.*, Civ. No. 3–84–1616 (D.Minn. June 26, 1985) [1985 WL 8054] *aff'd sub nom. O'Connell v. Champion International Corp.*, 812 F.2d 393 (8th Cir.1987). Similarly the *Morelock* case merely assumes that section 256 does not apply to the ADEA, and in *Blankenship*, the court simply observed that section 256 does not apply. The recent *Vivone* decision provides more analysis, but we have not relied on that case in reaching our decision here.[4]

### III. Piggybacking of Claims

None of the opt-in plaintiffs filed age discrimination charges with the EEOC. In general, an individual cannot commence an ADEA civil action "until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]," and only if the charge is filed within a certain time period. 29 U.S.C. § 626(d) (1982). A plaintiff is required to file a charge so that the EEOC may attempt to conciliate the matter without the necessity of suit.

Despite the charge requirement, the Seventh Circuit has held that under certain circumstances, a party who has not filed a timely charge with the EEOC may "piggyback" onto the suit of someone who has filed such a charge. *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008 (7th Cir.1988). In *Anderson*, thirty-nine former Montgomery Ward managers filed age discrimination charges with the EEOC and then later brought an ADEA suit against the retailer. Montgomery Ward moved for summary judgment against seven of the plaintiffs, alleging that their participation in the suit was barred because they filed their EEOC charges late. The Seventh Circuit held that the seven plaintiffs were not barred. The court held that an individual

4. The opt-in plaintiffs also argue that the statute of limitations was equitably tolled when Levine informed Lane Bryant of his intent to send notice. The opt-ins argue that Lane Bryant knew at that time that the opt-ins were coming, and that they were late only because of delay while the parties briefed the notice question. Given our holding that the statute of limitations was tolled only when the opt-ins consented, we need not reach this issue.

need not file an EEOC charge to be able to join a representative suit under the ADEA, as long as the charge that was filed contained an allegation of class-wide discrimination. This notification is necessary so that "the defendant at least be apprised during the conciliation process of the possibility of a subsequent lawsuit with many plaintiffs." *Anderson,* 852 F.2d at 1016. The court noted that at least twenty-three of the timely charges contained plain allegations of class-based discrimination, and that Montgomery Ward admitted knowing that it faced a class-wide ADEA suit. *Id.* at 1017. "Under these facts, we can only conclude that all the purposes for ADEA's charge-filing requirement have been satisfied." *Id.*

■] Lane Bryant attempts to distinguish its case from the *Anderson* decision. Lane Bryant notes, as the Seventh Circuit did, that Montgomery Ward faced twenty-three charges of age discrimination and admitted knowing it was faced with a class-wide suit. Here, by contrast, there was only one charge, and Lane Bryant has filed an affidavit from its lawyer stating that he was never "appraised [sic]" that the EEOC was investigating class-wide allegations. Affidavit of Jeremy P. Sherman, ¶ 4, Lane Bryant's Exh. 6, Memo in Support of Motion to Strike. We recognize the factual differences between the two cases, but conclude that the holding of *Anderson* cannot be limited to its particular facts. The Seventh Circuit's exact holding does not refer to the twenty-three charges; rather, the court stated that *"the charge* must, at the very least, contain an allegation of class-wide discrimination.... [O]nly *a charge* that fulfills [the] notice criterion may serve as a basis for suit by others, who are similarly situated." *Anderson,* 852 F.2d at 1016 (emphasis added). In addition, at least three of the four cases that the Seventh Circuit cited as support clearly hold that an individual charge alleging class-wide discrimination is sufficient for piggybacking. *Kloos v. Carter–Day Co.,* 799 F.2d 397, 400 (8th Cir.1986); *Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981); *Bean v. Crocker National Bank,* 600 F.2d 754, 759 (9th Cir.1979).

The fourth case seems to imply the same thing, *Mistretta v. Sandia Corp.,* 639 F.2d 588, 593–94 (10th Cir.1980). Likewise, we do not read *Anderson* to require the opt-in plaintiffs to prove that Lane Bryant actually knew that it was faced with a class-wide suit. The Seventh Circuit imposed only a "notification requirement," *Anderson,* 852 F.2d at 1017, and this makes sense, since knowledge is difficult to prove unless a party admits to it. As long as the EEOC charge gives notice to the employer that the consequences of an individual's charge may transcend an isolated individual claim, *see id.,* this notification requirement is met.

Lane Bryant, however, asserts that Levine's EEOC charge cannot be read to give such notice. As noted previously, Levine's EEOC charge stated:

> III. I believe I have been discriminated against because of my Age 52 in that:
>
> \*   \*   \*   \*   \*   \*
>
> C. Respondent [Lane Bryant] has made statements that they want "new blood" in management. Since the new management started many employees over 50 years old in managerial positions have been discharged throughout the Country. All have been replaced by younger employees in the age group 20's and 30's.

Lane Bryant asserts that this was not enough to put it on notice of possible class-wide claims. Lane Bryant finds it particularly telling that Levine requested only individual relief in his charge. Levine's statement, according to Lane Bryant, "simply is not an express or implied representation demanding redress for classwide age discrimination." Lane Bryant's Memo in Support of Motion to Strike at 10.

Lane Bryant has manifestly misread the *Anderson* decision. All that is necessary is an allegation of class-wide age discrimination:

> [W]e do not believe that such an explicit mention that a representative action is contemplated is necessary. Like the *Kloos* court, we believe that "[t]o be faithful to the purposes of the filing requirement, an administrative charge must allege class-wide age discrimination

or claim to represent a class in order to serve as the basis for an ADEA class action under section 216(b)."

*Anderson,* 852 F.2d at 1017 (quoting *Kloos v. Carter–Day Co.,* 799 F.2d 397, 400 (8th Cir.1986)). As the district court opinion in *Anderson* makes clear, none of the EEOC charges in that case were expressly representative. *Anderson v. Montgomery Ward & Co.,* 631 F.Supp. 1546, 1550 (N.D. Ill.1986), *aff'd,* 852 F.2d 1008 (7th Cir.1988). Nonetheless, the Seventh Circuit held that the charges sufficiently alleged class-wide discrimination. Levine's charge just as clearly alleges class-wide discrimination: "Since the new management started many employees over 50 years old in managerial positions have been discharged throughout the Country. All have been replaced by younger employees in the age group 20's and 30's." [5]

## IV. Who May Piggyback

Lane Bryant asserts that even if Levine's EEOC charge constituted a sufficient allegation of class-wide discrimination, the four opt-in plaintiffs do not fall into the class that Levine identified. Lane Bryant characterizes this class as " 'employees over 50 years old' discharged by 'new management' of which '[a]ll have been replaced by younger employees in the age group 20's and 30's' " Lane Bryant's Memo in Support of Motion to Strike at 12. According to Lane Bryant, none of the opt-ins fit into this class. Barbara Cleland, for example, was not over 50 when she was discharged and was replaced by someone older, not someone in her 20's or 30's. Likewise, according to Lane Bryant, Pauline Goldstein was not discharged; instead, she resigned rather than transfer to a store in Cleveland. Finally, Lane Bryant alleges that Betty Bryant, Barbara Cleland and Martin Gluck were not discharged by new management, but by management who worked for Lane Bryant before it was acquired by The Limited, Inc. Accordingly,

Lane Bryant argues that the opt-ins cannot now participate in Levine's suit.

We disagree for a number of reasons. First, we believe that the motion to strike the opt-ins' notices of consent should be treated like a motion to dismiss; therefore, evidentiary issues need not be considered. Second, even if we did consider evidence, we note that Lane Bryant presents no evidence whatsoever to support its claims that Barbara Cleland was under fifty when dismissed, that she was replaced by someone older than she was or that she was discharged by someone who worked for Lane Bryant before it was taken over. In addition, Lane Bryant presents only inadmissible hearsay for its claim that Pauline Goldstein quit because she did not want to go to Cleveland. Third, we note that Lane Bryant has mischaracterized the class that Levine identified in his charge. Levine did not say that the employees over fifty were discharged by new management. Rather, he charged that the discriminatory discharges took place "[s]ince the new management started." At any rate, the fact, if it is true, that the opt-ins were fired by erstwhile Lane Bryant employees is not inconsistent with a charge of discrimination on the part of new management. If, as Levine charged, The Limited wanted "new blood," the managers likely would have complied rather than risk finding themselves out of a job, and this would be true no matter when they started working for Lane Bryant.

Finally, Lane Bryant asserts that Barbara Cleland cannot participate in Levine's suit because she was not discharged until after Levine filed his EEOC charge. Lane Bryant argues that an opt-in plaintiff can piggyback onto a timely-filed EEOC charge only if he or she could have filed a timely charge on that same date. Because Cleland was still working when Levine filed with the EEOC, she could not have filed her own charge and therefore, according to Lane Bryant, cannot participate in this suit.

---

**5.** In an attempt to bolster their claim, the opt-in plaintiffs point to a letter that Levine wrote to the EEOC after he filed his charge and an age discrimination charge by Alan Herman, who later settled with Lane Bryant. Because we have decided that Levine's charge contained a sufficient allegation of class-wide discrimination, we need not decide whether these items should be considered or what influence they might have.

We must disagree. It is true that opt-in plaintiffs must be excluded if they were discharged more than 300 days (the period specified in 29 U.S.C. § 626(d)(2) (1982)) before a named plaintiff files an EEOC charge, because they could not have filed a timely charge on the date the named plaintiff filed. *Behr v. Drake Hotel*, 586 F.Supp. 427, 431 (N.D.Ill.1984).[6] However, in at least one Title VII case, the Seventh Circuit has permitted piggybacking by persons discharged after EEOC charges were filed, even though they could not have filed charges on that date. *McDonald v. United Air Lines, Inc.*, 587 F.2d 357 (7th Cir.1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). In *McDonald*, the plaintiffs were stewardesses who were fired or constructively discharged because of United's no-marriage rule. The Seventh Circuit held that only those stewardesses discharged in the period starting ninety days (the then applicable period under Title VII) before the first EEOC charges and ending when the no-marriage rule was abandoned three years later could remain in the class. *See id.* at 361. Thus, those stewardesses who were discharged after the first EEOC charges were filed but who did not file their own charges were allowed to piggyback onto the earlier charges, even though they could not have filed with the EEOC at that time. It is true that *McDonald* was a Title VII case, not an ADEA case, but the Seventh Circuit has emphasized "the strong parallelism between the charge-filing requirements of ADEA and Title VII." *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir. 1988). We conclude, therefore, that *McDonald* applies to the ADEA.

Lane Bryant, however, argues that *McDonald* is distinguishable. In *McDonald*, the court observed that its ruling was not unfair, because United "was put on notice by the [first EEOC] filings that aggrieved stewardesses were challenging its no-marriage rule policy." *McDonald*, 587 F.2d at

361 (footnote omitted). According to Lane Bryant, Levine's charge did not give Lane Bryant "notice that its employment decisions carried out against employees *after* the charge filing were encompassed in [Levine's] claims." Lane Bryant's Memo at 14. This argument is specious. Just as the first EEOC charges put United on notice that someone was challenging its alleged sex discrimination, Levine's EEOC charge put Lane Bryant on notice that someone was challenging its alleged age discrimination. In this respect, the cases are exactly the same. Accordingly, Cleland, along with the other opt-in plaintiffs, can piggyback onto Levine's EEOC charge.[7]

### Conclusion

For the foregoing reasons, Lane Bryant's motion to strike the notices of counsel of the opt-in plaintiffs is denied. It is so ordered.

---

6. However, this 300–day period is subject to equitable modification. *Behr*, 586 F.Supp. at 431.

7. The opt-in plaintiffs also argue that the charge-filing requirements were tolled by Lane

Bryant's failure to post notices informing employees of their rights under the ADEA. Since we have held that opt-in plaintiffs can piggyback, we need not decide that issue.