**Richard SPERLING, Frederick Hemsley and Joseph Zelauskas, Individually and on Behalf of all Other Persons Similarly Situated, Plaintiffs,**

v.

**HOFFMANN–LA ROCHE, INC., Defendant.**

Civ. A. No. 85–2138.

United States District Court, D. New Jersey.

Dec. 18, 1992.

Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for plaintiffs.

Leonard N. Flamm, New York City, Schwartz, Tobia & Stanziale, Montclair, NJ, for defendant.

OPINION

HAROLD A. ACKERMAN, District Judge.

This is a putative class action brought by former employees of defendant Hoffmann–La Roche, Inc. ("Roche"), on behalf of themselves and others similarly situated, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Before me now is plaintiffs' motion for legal tolling of the statute of limitations. This motion was referred to the Special Master appointed in this action, who submitted a Report recommending that the court grant plaintiffs' motion. Because the motion for legal tolling is a dispositive motion, I must review the matter *de novo.*

For the reasons discussed below, plaintiffs' motion for legal tolling is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 1984, Roche discharged or demoted about 1,200 employees pursuant to a systematic reduction in force, or "RIF." Richard Sperling, one of the employees and a named plaintiff in this case, filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC") for himself and for all employees similarly situated. On May 7, 1985, Sperling, along with the other named plaintiffs, filed an action in this court alleging, *inter alia,* that the defendant had discriminated against a defined class of employees in violation of the ADEA. Plaintiffs then moved for discovery of the names and addresses of all similarly situated employees and requested that the court send notice of the action to all potential class members. The court granted plaintiffs' motion on January 5, 1988. The court's order authorized plaintiffs to send a notice and consent form to employees and provided that all consents be filed with this court by a certain date. This order was subsequently affirmed by both the Third Circuit and the United States Supreme Court.

In April 1990, the notice of pendency of this action was finally circulated among Roche's former employees. Thereafter, approximately 100 persons filed consents to join the action. These consents, although filed within the time permitted by this court's order, were filed after the applicable statute of limitations had expired. Plaintiffs then moved for an order providing that the filing of the original complaint in this action tolled the statute of limitations as to those plaintiffs who subsequently joined the action.

This motion was referred to the Special Master in this case, Professor Alan Schwartz. The parties fully briefed the issue and had oral argument before the Special Master, who issued his Report on August 28, 1992. The Report recommends that plaintiffs' motion for legal tolling of the statute of limitations be granted as to those individuals who joined the action in accordance with the procedure established by this court's order of January 5, 1988.

In his Report, the Special Master observed that neither the statutory language nor the legislative history of the ADEA provides a definitive answer to the question of tolling in ADEA actions. He therefore proceeded to analyze the policies underlying the statute of limitations and class actions, generally and under the ADEA. He first reasoned that a class action should be treated like a true representative class action when 1) the rights of nonparties are fully protected by the named plaintiff because the named plaintiff raises the claims of all class members and must prove everything the class members would have to prove; and 2) the defendant receives adequate notice of all class members' claims from the class complaint. The Special Master then reasoned that when these requirements are satisfied, the statute of limitations should be tolled since the goals of the statute of limitations—timely notice to the defendant of the claims against it and preventing plaintiffs from sleeping on their rights—are also satisfied. With respect to class actions under the ADEA, the Special Master noted that age discrimination cases often raise issues common to large groups of employees. That is, the claims of all class members are similar where an em-

ployer is alleged to have engaged in a practice or course of conduct that affected a large number of employees in a similar fashion. Thus, when an ADEA action is brought, the named plaintiff will raise the claims of all affected employees and the defendant employer is given timely notice of all claims against it. The Special Master thus concluded that ADEA class actions should be treated as true representative class actions for purposes of the statute of limitations, thereby warranting tolling. He noted that tolling is also consistent with the antidiscrimination goals of the ADEA.

The defendant filed objections to the Special Master's Report on October 13, 1992. Plaintiffs responded to those objections and the defendant was given the opportunity to reply.

## II. DISCUSSION

### A. Background Discussion

#### 1. Class Actions under Rule 23

To provide a background for my analysis of class actions under the ADEA and tolling, I will begin with a brief discussion of the class action procedure created by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 governs most federal class actions, including those involving race and sex discrimination. *See* Fed.R.Civ.P. 23. Under Rule 23, all class members are automatically bound by the judgment. That is, there is no requirement that class member affirmatively join the action in order to participate in the action and be bound by the judgment. Under Rule 23(b)(3), class member may elect to "opt-out" of the class action, however, and thus not be bound by the judgment. Under Rule 23(b)(1) and (b)(2) class members are precluded from opting-out.

■ The Supreme Court has held that under Rule 23, the commencement of a class action tolls the statute of limitations as to all class members. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). The Court stated that a principal purpose of the class action procedure is the "promotion of efficiency and economy of litigation." *Id.*

at 553, 94 S.Ct. at 766. According to the court, tolling is necessary to protect these policies. *Id.* at 554, 94 S.Ct. at 766. Unless the filing of the class action complaint tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join, or to file separate actions in order to protect themselves in the event that class certification was denied. *Id.* at 553, 94 S.Ct. at 766.

#### 2. Class Actions under the ADEA

The ADEA prohibits employers from discriminating against employees on the basis of age. Enforcement of the ADEA is governed in part by certain provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"). That is, the enforcement provision of the ADEA, 29 U.S.C. § 626, incorporates certain select provisions of the FLSA. Specifically, 29 U.S.C. § 626(b) provides that the ADEA shall be enforced in accordance with the procedures set forth in Section 16 of the FLSA. 29 U.S.C. § 216.

■ Class action procedure under the ADEA is governed by Section 16(b) of the FLSA. This section provides that an action may be maintained against any employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Section 16(b) continues: "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). This statutory scheme thus creates an "opt-in" class action procedure. Putative class members must affirmatively file consents with the court, and thus "opt-in," in order to participate in the action and be bound by the judgment. Because the ADEA explicitly incorporates an opt-in procedure, it has been generally held that the Rule 23 procedure for class formation is inapplicable to ADEA class actions. *See Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J.1988), (citing cases), *aff'd*, 862 F.2d 439 (3d Cir.), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The ADEA also incorporates the two-year statute of limitations [1] of the FLSA, which is set forth in 29 U.S.C. § 255. 29 U.S.C. § 256 of the FLSA provides that an action is considered commenced in the case of any individual claimant on the date that individual's written consent is filed with the court in which the action was commenced. Thus, under the FLSA, the filing of the class action complaint does not toll the statute of limitations as to putative class members who opt-in after the statute of limitations would have otherwise expired. The ADEA, however, does not explicitly incorporate this section of the FLSA. Rather, the ADEA's incorporation section, Section 626(e), refers only to Section 255 and is silent as to the issue of legal tolling. The ADEA itself therefore leaves open the question of whether tolling should apply to ADEA class actions.

Analysis of the statutory scheme of the ADEA, the existing case law, and the policies and goals underlying class actions and statutes of limitations, persuades me to find that the best resolution of this issue is that the statute of limitations is tolled in ADEA class actions.

B. Statutory Interpretation of the ADEA and FLSA

As noted above, Congress incorporated certain provisions of the FLSA into the ADEA. This incorporation, however, was selective. *See Mooney v. Aramco Servs. Co.*, 764 F.Supp. 461, 462–63 (S.D.Tex. 1991); *Vivone v. ACME Markets, Inc.*, 687 F.Supp. 168, 169 (E.D.Pa.1988). As recognized by the United States Supreme Court, "in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Lorillard v.*

*Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). In light of this selectivity, Congress' failure to expressly incorporate Section 256 is a clear indication that it did not intend to prevent legal tolling principles from applying in ADEA class actions. *Levine v. Bryant*, 700 F.Supp. 949, 953 (N.D.Ill.1988) ("Congress did not intend for section 256 to apply to the ADEA."); *Mooney*, 764 F.Supp. at 462 ("The application of § 256 is refuted by the clear language of the ADEA"); *see also Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978) ("Section 256 is not incorporated by reference into the ADEA, and therefore we fail to see how it could be applicable to age discrimination suits.") (dictum), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). As noted by my colleague, Judge Sarokin, who found that the ADEA does not incorporate Section 256 of the FLSA, "[i]t is a standard rule of statutory construction that when the legislature expressly provides for a ... procedure it means to exclude other potential ... procedures." *Mershon v. Elastic Stop Nut Division of Harvard Indus.*, Civ. No. 87–1319, 1990 WL 484152 (D.N.J. March 23, 1990), slip op. at 10.

Moreover, there appears to be a valid justification for Congress' failure to incorporate Section 256. Suits under the FLSA differ in several respects from suits under the ADEA. For example, under the ADEA, the plaintiff must file a discrimination charge with the EEOC prior to commencing an action. This filing requirement is missing under the FLSA. Thus there is a greater risk under the FLSA that an employer would be confronted by "surprise claims of unnamed employees." *Gibbons v. Equitable Life Assur. Soc.*, 173 F.2d 337, 339 (1949).[2]

Roche argues nevertheless that Section 256 should be deemed to have been implicit-

---

1. The statute of limitations for willful violations of the ADEA is three years. 29 U.S.C. § 626(e).

2. In 1967, when the ADEA was enacted, the majority view with respect to "spurious" or opt-in class actions under former Rule 23 was that filing of the action tolled the statute of limita-

tions for all absent class members. *American Pipe*, 414 U.S. at 549–50 & nn. 18–19, 94 S.Ct. at 764–65 & nn. 18–19 (1974). Thus, if Congress had wanted the minority view to apply to ADEA actions, presumably it would have so provided.

ly incorporated into the ADEA.[3] It argues that Section 255 of the FLSA must be read together with Section 256 since Section 256 provides a definition for when an action is "commenced" for class members who opt-in after the filing of the complaint. It argues that because the ADEA does not provide a different definition of "commenced," Congress intended for the definition of Section 256 to apply. This argument is unpersuasive. First, such an interpretation would frustrate Congress' selective incorporation of FLSA provisions. Second, it is not unreasonable that Congress intended the "normal" rule to apply, that is, the tolling rule applicable to Rule 23 class actions, as first enunciated by the Supreme Court in *American Pipe*.[4] *See Mooney*, 764 F.Supp. at 463 ("In the absence of a special tolling rule for the unnamed plaintiffs, this court sees no reason not to apply the normal rule for commencement as set forth in *American Pipe....*"); *Levine*, 700 F.Supp. at 953 (*American Pipe* rule applies to all class actions in the absence of statutory provisions to the contrary); *Vivone*, 687 F.Supp. at 169 ("no reason to diverge from the ordinary rule that the commencement of the lawsuit tolls the statute of limitations"). As will be discussed below, important policy considerations warrant application of Rule 23 tolling principles rather than the non-tolling rule under the FLSA.

Finally, although the ADEA does share some procedural similarities with the FLSA, it also shares many similarities with Title VII, which is governed by Rule 23. The ADEA and Title VII share a common purpose and many substantive law provisions. They also contain similar administrative exhaustion requirements. *See, e.g., Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979); *Lorillard*, 434 U.S. at 584, 98 S.Ct. at 872. Thus, it is reasonable that Congress intended the tolling rule applicable to Title VII cases to apply, rather than the non-tolling rule of Section 256 of the FLSA. Courts have looked to and applied other Title VII procedural aspects to ADEA class actions. *See, e.g., Oscar Mayer*, 441 U.S. at 758 n. 6, 99 S.Ct. at 2073 n. 6 (applying Title VII "piggyback" doctrine to ADEA actions); *Lusardi v. Lechner*, 855 F.2d 1062, 1076–77 (3d Cir.1988) (same).[5]

---

3. In support of its argument, Roche relies on the statement of United States Senator Jacob Javits that the ADEA "incorporates by reference, to the greatest possible extent the provisions of the Fair Labor Standards Act." 113 Cong.Rec. 31254 (1967). However, this statement merely reflects the view of one senator and therefore should not be given great weight. *See Weinberger v. Rossi*, 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982) (remarks of one senator "certainly not controlling in analyzing legislative history"). In any event, the remarks of Senator Javits can just as well support plaintiffs' position. The statement that the ADEA incorporates the FLSA "to the greatest possible extent" suggests that instances of non-incorporation were also contemplated. *See Levine*, 700 F.Supp. at 952.

4. Congress also could have relied on the relation-back doctrine of Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides that an amended pleading which changes a party to the action relates back to the date of the original pleading when certain requirements are met. *See* Fed.R.Civ.P. 15(c). In the *Mershon* decision, Judge Sarokin noted that application of Section 256 to ADEA actions "would run contrary to an established rule of federal practice—the relation back doctrine of Fed.R.Civ.P. 15(c)." *Mershon*, Civ. No. 87–1319, slip op. at

11. Although this analysis is certainly reasonable, I find that application of the tolling principle under Rule 23 is sounder than application of the relation-back doctrine of Rule 15(c). By its own terms, Rule 15(c) applies to situations where a different defendant is named. Moreover, for the amended pleading to relate back, there must have been a mistake concerning the identity of the proper party. Thus, it appears that Rule 15(c) does not readily apply to the opting-in of plaintiffs to a class action.

5. The defendant also points to another provision of the FLSA, 29 U.S.C. § 216(c), which was incorporated by the ADEA. This provision provides that in actions brought by the government to recover money damages on behalf of individual employees, the action is deemed commenced when the employee's name is added as a party plaintiff in the action. The defendant argues that failure to implicitly incorporate Section 256 creates the anomaly that there is tolling in private suits but not in government suits.

This argument is also unpersuasive. The existence of different procedural mechanisms for government and private actions does not necessarily create an anomaly. Moreover, there is a good reason why there should be different procedures. As noted above, private actions under the ADEA require opt-in consents to be filed

362

### C. Case Law

The cases that have addressed the issue of tolling in ADEA actions have focused on the statutory schemes of the ADEA and the FLSA and legislative intent. The majority of the decisions, including the two courts in the Third Circuit to have considered the issue, have found that Section 256 of the FLSA was not incorporated into the ADEA and that therefore the statute of limitations is tolled in ADEA class actions. *See, e.g., Mershon,* Civ. No. 87–1319 (D.N.J. March 23, 1990); *Vivone v. ACME Markets, Inc.,* 687 F.Supp. 168, 169 (E.D.Pa.1988); *Mooney v. Aramco Servs. Co.,* 764 F.Supp. 461, 462–63 (S.D.Tex. 1991); *Levine v. Bryant,* 700 F.Supp. 949, 953 (N.D.Ill.1988); *see also Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir. 1978).

Two courts have found that Section 256 of the FLSA does apply to ADEA actions. In *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393 (8th Cir.1987), the Eighth Circuit adopted, without discussion, the reasoning of the district court, which in turn relied solely upon the reasoning of two FLSA decisions. *Owens v. Bethlehem Mines Corp.,* 630 F.Supp. 309 (S.D.W.Va.1986), held, also without discussion, that tolling does not apply to the ADEA. *See also Mershon,* Civ. No. 87–1319, slip op. at 12–13 (criticizing reasoning of *O'Connell* and *Owens* ).

Thus the weight of authority supports the application of tolling in ADEA actions. I move on, however, to consider the policies underlying class actions in general, ADEA class actions, and statutes of limitations.

### D. Policies underlying Class Actions and Statutes of Limitations

#### 1. Policies underlying Class Actions

As noted above, the class action procedure furthers the goals of judicial efficiency and economy of litigation. To protect these policies, the Supreme Court has held in the context of a Rule 23 class action, that commencement of a class action tolls the statute of limitations as to all class members. *American Pipe,* 414 U.S. at 554, 94 S.Ct. at 766. The Court explained that unless the filing of the class action complaint tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join, or to file separate actions in order to protect themselves in the event that class certification was denied. *Id.* at 553, 94 S.Ct. at 766. Thus, according to the Court, tolling the statute of limitations avoids a "multiplicity of actions." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 351, 103 S.Ct. 2392, 2396, 76 L.Ed.2d 628 (1983).

These principles apply equally to class actions under the ADEA. If the statute of limitations is not tolled in ADEA class actions, potential class members will be induced to file separate actions or motions to intervene prior to the running of the statute of limitations in order to protect their rights in the event the court does not permit the action to go forward as a class action. The purposes of the class action device—conservation of judicial resources and efficiency—would be frustrated as a result.

Roche argues, however, that reliance on Rule 23 class action tolling principles is misplaced. According to Roche, the differences between the Rule 23 class action and the ADEA class action warrant different application of tolling principles.[6] First, it argues that the ADEA class action is analogous to permissive joinder under Rule 20 of the Federal Rules of Civil Procedure, under which each plaintiff must individually satisfy the statute of limitations. This analogy,

---

with the court and a discrimination charge to be filed with the EEOC. These filing requirements are absent from the government suit. Moreover, the EEOC has broad subpoena power which enables it to obtain the names and addresses of potential plaintiffs without having to wait for the commencement of litigation. *See* 29 U.S.C. § 626(a).

6. The defendant argues that "there is a fundamental, irreconcilable difference between the class action described in Rule 23 and that provided by [§ 216(b) ]", citing *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir. 1975). Defendant's Br. at 5. *LaChapelle,* however, addressed a purely jurisdictional matter; the statute of limitations was not at issue in that case. *Mooney,* 764 F.Supp. at 463.

however, has been rejected by the Third Circuit, as well as other Courts of Appeals. These courts have recognized that an ADEA class action does much more than merely create a right of permissive joinder. In affirming this court's decision authorizing notice to putative class members under the ADEA, the Third Circuit stated:

> [t]he district court's rationale in authorizing notice to putative class members and requiring divulgence of their identities followed the analysis articulated by Judge Posner in *Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir.1982). There the court explained that § 216(b) does more than create the right of permissive joinder already provided by Rule 20 of the Federal Rules of Civil Procedure. *Id.* at 580. Instead, it continued, the section's authorization of a representative action, "surely must carry with it a right in the representative plaintiff to notify the people he would like to represent that he has brought a suit, and a power in the district court to place appropriate conditions on the exercise of that right." *Id.*

*Sperling v. Hoffman–La Roche, Inc.*, 862 F.2d 439, 446 (3d Cir.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). In *Lusardi v. Lechner*, the Third Circuit also rejected the analogy to permissive joinder in holding that the ADEA does not require each class member to satisfy a presuit filing requirement. *See* 855 F.2d at 1078. *See also* Spahn, *Resurrecting the Spurious Class: Opting–In to the Age Discrimination in Employment Act and the Equal Pay Act through the Fair Labor Standards Act*, 71 Geo.L.J. 119, 121 (1982) (noting that treatment of ADEA class action procedure as permissive joinder "precludes classwide attacks on systemic discrimination"). Thus, the defendant's argument based on permissive joinder is without merit.

The defendant next points to the specific differences between the ADEA and Rule 23, such as different standards for class certification and the consent requirement of the ADEA. Although there are procedural differences between class actions under the ADEA and those under Rule 23, it does not logically follow that the same tolling principles cannot apply. The defendant has failed to articulate why these differences alone dictate application of different tolling principles. In contrast, as explained above, application of tolling in ADEA class actions will serve the laudable goals of judicial economy and efficiency.

The defendant argues, however, that the rationale for tolling articulated by the Supreme Court in *American Pipe* and *Crown Cork*—that tolling is necessary to prevent a multiplicity of activity—is inapplicable to ADEA actions because a " 'multiplicity of activity,' *i.e.*, applications to join the action, must occur *as a matter of law* in order for the court to acquire jurisdiction over unnamed 'class' members." Defendant's Br. at 13. I disagree. The defendant mistakenly equates the filing of consent forms with the filing of individual lawsuits or motions to intervene. The "multiplicity of activity" the Supreme Court sought to avoid was the filing of individual lawsuits and motions to intervene or join, *see American Pipe*, 414 U.S. at 553, 94 S.Ct. at 766, *Crown, Cork*, 462 U.S. at 351, 103 S.Ct. at 2396, which necessarily strain judicial resources because they necessitate separate judicial determinations. The filing of consent forms does not.[7]

Moreover, there are important similarities between Rule 23 class actions and ADEA class actions that point to application of the same tolling principle. Although class members are not bound to a judgment until they file a consent, the ADEA action is nevertheless "representative." *See Woods v. New York Life Ins.*

---

7. The defendant also argues that tolling under Rule 23 "implicates a fairness concern not present in § 216(b) situations, namely, the absent class members' potential reliance on the application for class certification through which they had hoped to assert their claims." Defendant's Br. at 14. The Supreme Court, however, did not rely on this reason when it held that the statute of limitations should be tolled in Rule 23 class actions. *See American Pipe*, 414 U.S. at 551, 94 S.Ct. at 765 ("no different standard should apply to those members of the class who did not rely upon the commencement of the class action").

*Co.*, 686 F.2d 578, 580 (7th Cir.1982). An employee may sue "on behalf of" employees "similarly situated." The "similarly situated" requirement means that once class members have opted-in, the class action representative will be able to prosecute and maintain a class action on their behalf. The filers will become bound by the judgment to the same extent as in a Rule 23 class action. Thus the very nature of an ADEA class action as a representative action supports the notion that each individual class member should not be required to satisfy the statute of limitations requirement, as in Rule 23 class actions.

The representative characteristic of an ADEA action is further demonstrated by the "piggyback doctrine." In ADEA actions, plaintiffs must file a discrimination charge with the EEOC prior to commencing an action. The purpose of this pre-suit filing requirement is to provide the employer with notice of the charge against it in order to provide an opportunity for conciliation. Under the piggyback doctrine, a class representative who files a timely EEOC charge on behalf of others similarly situated, satisfies the filing requirement for all such employees. As the Third Circuit has explained:

> [I]t makes little sense to permit the opt-in class action to be started by a few and later joined by many if individual requirements of exhaustion of remedies can defeat the individual claims of those who opt-in, but have not individually met administrative filing requirements.

*Lusardi*, 855 F.2d at 1078. Similarly, it makes little sense to allow an opt-in class action to be commenced by a few plaintiffs and later joined by others if the statute of limitations can defeat the claims of those who opt-in. Indeed, it makes little sense to require individual opt-ins to satisfy the statute of limitations, yet not require them to individually exhaust administrative remedies otherwise required under the ADEA.

### 2. Statute of Limitations

■ Tolling of the statute of limitations in ADEA class actions is entirely consistent with the policies underlying the statute of limitations. The goals of limitations periods are twofold: 1) to provide notice to defendants of claims against them; and 2) to discourage plaintiffs from sleeping on their rights. *Crown, Cork*, 462 U.S. at 352, 103 S.Ct. at 2397. Both these goals are accomplished at the time a class action, including an ADEA class action, is commenced. With regard to the first goal, the class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 555, 94 S.Ct. at 767; *see Mooney*, 764 F.Supp. at 463 (notice to the defendant of the scope and nature of the potential for liability in ADEA actions will prevent surprise and should therefore toll statute of limitations). The defendant is made aware that it needs to preserve evidence and witnesses as to all members of the class. *Crown, Cork*, 462 U.S. at 353, 103 S.Ct. at 2397. Thus, there is no potential for unfair surprise. *Id.* In ADEA class actions in particular, there is no danger of unfair surprise since an employer gets notice of class-wide claims twice: first, from the discrimination charge filed with the EEOC; and second, from the class complaint.

As to the second goal, preventing plaintiffs from sleeping on their rights is not at issue here because in class actions, plaintiffs are expected to rely on the class representative to pursue their claims. *Id.* Although under the ADEA class members must file consents, it is expected that the class action representative will prosecute and maintain the ADEA action on their behalf. Opt-in class members forego instituting their own actions or making motions to intervene in reliance on the named plaintiff instituting the class action.

The defendant argues, however, that an ADEA class action gives less notice of the scope of the class because not every class member may decide to opt-in. This concern is unwarranted. The relevant concern is whether the defendant has notice of all potential claims against it. An employer certainly cannot claim prejudice when few-

er than all class members decide to opt-in.[8] Moreover, the class members in a ADEA action must be "similarly situated." Although it is unclear to what extent this requirement parallels the Rule 23 class certification requirements of commonality and typicality, *see* Fed.R.Civ.P. 23, it does nevertheless provide the employer with notice of the factual bases of the claims. *See Sperling*, 118 F.R.D. at 407.

3. Policies underlying the ADEA

■ Tolling of the statute of limitations in ADEA class actions is supported by the remedial and humanitarian nature of the ADEA. As recognized by both the United States Supreme Court and the Third Circuit, the ADEA must be liberally construed in order to effectuate its goal of eradicating age discrimination in employment. *See Sperling*, 493 U.S. at 173, 110 S.Ct. at 488; *Bonham v. Dresser Indus., Inc.*, 569 F.2d 187, 193 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Sperling*, 118 F.R.D. at 403. As the Supreme Court noted, "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Sperling*, 493 U.S. at 173, 110 S.Ct. at 488.

In accordance with this policy, the Supreme Court has held that a court may authorize class-wide notice in ADEA actions. *Id.* at 169, 110 S.Ct. at 486. The Court stated that the benefits of the ADEA class action "depend on employees receiving accurate and timely notice concerning the pendency" of the action. *Id.* at 170, 110 S.Ct. at 486. Failure to permit tolling of the statute of limitations, however, would undermine the notice procedure sanctioned by the Court. In the absence of tolling, dissemination of notice could be an act of futility because the statute of limitations would bar those plaintiffs who did not file their consents within the limitations period.

The case before this court is illustrative of this potential problem. The complaint was filed on May 7, 1985, three months after the alleged discriminatory conduct occurred. Plaintiffs soon thereafter moved for court-authorized service. Plaintiffs' motion was not granted, however, until January, 1988, well over two years after the alleged unlawful conduct took place and therefore after the statute of limitations had already expired. Without tolling, the claims of these opt-ins would be barred. As recognized by the Third Circuit in the context of the EEOC charge filing requirement, barring the claims of opt-ins is "especially unfair where the time in which claimants must meet filing requirements expires while the court is deciding whether" the action should go forward as a class action. *Lusardi*, 855 F.2d at 1078. The court continued:

> If the clock continues to run against those who opt-in after the action is filed, or the clock is turned back when the class is decertified to the date the action commenced, sensible exercise of judicial discretion in determining the relative convenience and efficiency of an opt-in class action will be hampered, and the Congressional intent to allow class actions in cases involving systemic age discrimination will be frustrated.

*Id.* at 1079.

In addition, as noted by Professor Spahn, certain substantive legal theories of employment discrimination are specifically directed at employment practices that detrimentally affect large groups of people. Spahn, *supra*, at 151. These theories—the pattern or practice theory and the disparate impact theory[9]—are particularly appropriate for class action treatment. Both the type of evidence required and the burdens of proof differ depending on whether the

---

8. Applying defendant's reasoning, Rule 23 class actions pose a similar problem because under Rule 23, the court has the discretion to certify a class smaller than that defined in the class complaint. The Supreme Court has held, however, that the statute of limitations goals are not hindered by applying tolling to Rule 23 class actions. *Crown, Cork*, 462 U.S. at 352–53, 103 S.Ct. at 2396–97.

9. In a pattern or practice case, discrimination is alleged to be the employer's "standard operating procedure." In a disparate impact case, a facially neutral employment practice has a disproportionate discriminatory impact on the protected class that cannot be justified by business necessity. Spahn, *supra*, at 150–51 n. 195.

discrimination is against a group or an individual. *See id.* (discussing use of statistical evidence and differing burdens of proof in systemic group discrimination cases). According to Professor Spahn "[i]f, as a matter of procedure, class treatment is unavailable in age discrimination ... cases, major substantive legal theories of discrimination will, as a practical matter, be virtually eviscerated." *Id.* at 151. Limiting the substantive theories available to victims of systemic group discrimination thus undermines the congressional determination that age discrimination is a widespread practice that must be eradicated. *Id.* Stated differently, failure to permit class treatment assumes that discriminatory acts are isolated occurrences rather than widespread practices.

## CONCLUSION

I find, based on an analysis of the statutory scheme of the ADEA and the policies underlying class actions and statutes of limitations, as well as the weight of the authority, that tolling should be applied in ADEA class actions. Plaintiffs' motion for legal tolling of the statute of limitations is therefore granted.