

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-1994

# Sperling, et al v. Hoffmann-La Roche, Inc.

Precedential or Non-Precedential:

Docket 93-5290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Sperling, et al v. Hoffmann-La Roche, Inc." (1994). *1994 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 93-5290
_____


RICHARD SPERLING; FREDERICK HEMSLEY; and
JOSEPH ZELAUSKAS, Individually and on
behalf of all other persons similarly situated,
Appellees

v.

HOFFMANN-LA ROCHE, INC.,
a New Jersey corporation,
Appellant

_____

Appeal from the United States District
Court for the District of New Jersey
(D.C. Civil Action No. 85-02138)

_____


Argued:  February 14, 1994

PRESENT:  BECKER, HUTCHINSON and COWEN, <u>Circuit Judges</u>

(Opinion Filed  May 3, 1994)
_____


Richard S. Zackin, Esquire          (Argued)
J. Timothy McDonald, Esquire
Crummy, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ     07102-5497

        and

Harold F. Boardman, Esquire
Vice President and General Counsel
Hoffmann-La Roche, Inc.
340 Kingsland Street
Nutley, NJ     07110-1199
        Attorneys for Appellant

Leonard N. Flamm, Esquire

Law Offices of Leonard N. Flamm, Esq.
880 Third Avenue
New York, NY    10022

        and

Ben H. Becker, Esquire                    (Argued)
Jill Schwartz, Esquire
Schwartz, Tobia & Stanziale
22 Crestmont Road
Montclair, NJ    07042
            Attorneys for Appellees

————————

OPINION OF THE COURT
————————

HUTCHINSON, Circuit Judge.


        By leave granted pursuant to 28 U.S.C.A. § 1292(b) (West 1993), Hoffmann-

Roche, Inc. ("Hoffmann-La Roche") appeals an interlocutory order of the United Stat

District Court for the District of New Jersey.  The district court's order granted

motion of former Hoffmann-La Roche employees to toll the statute of limitations in

discrimination class action. Sperling claims Hoffmann-La Roche engaged in age

discrimination against all similarly situated Hoffmann-La Roche employees in violat

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621-634 (West 198

Supp. 1993).  Tolling gave unnamed employees an opportunity to become members of th

in class that named appellees, Richard Sperling, Frederick Hemsley and Joseph Zelau

(collectively "Sperling"), represent.

        Class actions for age discrimination are authorized by section 7(b) of AD

(codified as amended at 29 U.S.C.A. § 626(b)).  Section 7(b) of ADEA expressly borr

opt-in class mechanism of section 16(b) of the Fair Labor Standards Act of 1938 ("F

(codified as amended at 29 U.S.C.A. § 216(b) (West Supp. 1993)).  Section 16(b) of

itself modified by the Portal-to-Portal Act of 1947 (codified as amended at 29 U.S.

3

§§ 251-262 (West 1985)). Section 6 of the Portal-to-Portal Act, 29 U.S.C.A. § 255,

expressly incorporated into ADEA until 1991. See 29 U.S.C.A. § 626(e)(1) (repealed

Nov. 21, 1991).[0]

Section 7 of the Portal-to-Portal Act, 29 U.S.C.A. § 256, states an opt-i

member's claim for relief under FLSA does not commence until the date the opt-in me

written consent to join the representative action is filed. Section 7, unlike sect

of the Portal-to-Portal Act, was not expressly incorporated into ADEA.

Over 400 persons filed consents to join Sperling's opt-in class within th

limitations period, but 102 did not file consents until after expiration of unamend

section 626(e)(1)'s two year statute of limitations on individual actions for non-w

violations of ADEA. Sperling contends these 102 consents were timely filed because

named plaintiffs' filing of a complaint in a representative action under ADEA legal

tolls the statute of limitations. The district court agreed and granted Sperling's

to legally toll the statute for the 102 persons whose individual actions would have

barred. See Sperling v. Hoffmann-La Roche, Inc., 145 F.R.D. 357, 366 (D.N.J. 1992)

Hoffmann-La Roche moved for interlocutory review of the legal tolling iss

pursuant to 28 U.S.C.A. § 1292(b). The district court certified the following ques

us pursuant to 28 U.S.C.A. § 1292(b):

> [T]he issue of whether filing of the original complaint in this action
> tolled the statute of limitations for those plaintiffs who joined the
> action pursuant to this Court's Order dated January 5, 1988, involves

---

[0]At the time Sperling filed suit, former section 626(e)(1) of ADEA incorporated the
year statute of limitations for non-willful violations set forth in section 6 of th
Portal-to-Portal Act. See 29 U.S.C.A. § 626(e)(1) (West 1985). The Civil Rights
1991, Pub. L. No. 102-166, Title I, § 115, 105 Stat. 1079, amended section 626(e)(1
ADEA. Under the current version of section 626(e), effective November 21, 1991, se
of the Portal-to-Portal Act is no longer expressly incorporated and the statute of
limitations for an age discrimination action is 90 days after receipt of a notice t
charge filed with the [EEOC] under this chapter is dismissed or the proceedings of
[EEOC] are otherwise terminated by the [EEOC]." 29 U.S.C.A. § 626(e) (effective No
1991) (West Supp. 1993). Neither party argues that the new limitations period appl
retroactively. Thus, the unamended version of section 626(e)(1) is the applicable
of limitations. See also infra n.14.

a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Joint Appendix ("App.) at 14A-15A.  Hoffmann-La Roche thereafter filed a petition s our permission to appeal, as section 1292(b) requires.  We granted its petition.

Whether an opt-in member in a class action can join a representative suit under ADEA after the statute of limitations on individual actions has run is a matt first impression in our Court.  We answer in the affirmative.  Under ADEA we believ Congress did not intend to restrict opt-in classes to employees who file consents w the applicable statute of limitations that section 16(b) of FLSA and section 6 of t Portal-to-Portal act set for individual age discrimination claims.  To the contrary believe that Congress expressed its intent to permit additional members to opt-in a the class by filing consents after the statute of limitations on their individual a would have run when it omitted section 7 of the Portal-to-Portal Act from those po of FLSA that it incorporated into ADEA's original statute of limitations.  We there hold qualified plaintiffs may join a representative action for age discrimination a the time period for their individual actions has lapsed when the representative pla have filed a complaint within the statute of limitations set forth in section 6 of Portal-to-Portal Act, provided, however, that the representatives have framed their complaint in a manner that puts the employer on notice that it will be called upon defend an opt-in class action.[0]  Therefore, we will affirm the district court's ord granting Sperling's motion to legally toll the statute of limitations and remand th to the district court for further proceedings consistent with that order and our an the certified question this appeal presents.

---

[0]As a prerequisite to their court action, we have previously held that the class representatives must include a similar notice in the charge they file with the EEOC Lusardi v. Lechner, 855 F.2d 1062, 1077-78 (3d Cir. 1988).

5

I.

On February 4, 1985, Hoffmann-La Roche discharged or demoted about 1,200

employees in a systematic reduction of its work force.  Sperling was one of them.

filed an age discrimination charge with the Equal Employment Opportunity Commission

("EEOC") on behalf of all similarly situated employees.  On May 7, 1985, Sperling f

his representative action in the district court.  The complaint alleged that Hoffma

Roche had engaged in unlawful age discrimination, clearly indicated its representat

nature, and was filed within the then applicable two year statute of limitations fo

willful violations of ADEA.

Sperling had already notified 600 potential plaintiffs and over 400 filed

written consents within the two year statute of limitations applicable to their ind

actions.  To ensure that all potential plaintiffs would receive notice of the suit,

Sperling moved for discovery of the names and addresses of all similarly situated

employees and requested the court to send notice of the action to all potential cla

members in accordance with section 7(b) of ADEA,[0] borrowed from section 16(b) of FL

The district court granted Sperling's motion on January 5, 1988 and required all co

_____

[0]Section 7(b) of the ADEA reads, in relevant part:

> The provisions of this chapter shall be enforced in accordance
> with the powers, remedies, and procedures provided in sections 211(b),
> 216 (except for subsection (a) thereof), and 217 of this title, and
> subsection (c) of this section. . . .

29 U.S.C. § 626(b).

[0]Section 16(b) of the FLSA requires each plaintiff to opt-in to the class actions i
allows.  It reads, in pertinent part:

> (b) . . . An action . . . may be maintained against any employer
> . . . by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee shall
> be a party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the court
> in which such action is brought. . . .

29 U.S.C.A. § 216(b).

7

forms to be filed with the court within a definite, limited time.  See Sperling v.

Hoffmann-La Roche, 145 F.R.D. 357, 358 (D.N.J. 1992).  Both this Court and the Unit

States Supreme Court subsequently affirmed this order.  See Sperling v. Hoffmann-La

Inc., 862 F.2d 439 (3d Cir. 1988), aff'd, 110 S. Ct. 482, 486 (1989) (district cour

discretion under ADEA to implement 29 U.S.C.A. § 216(b) by facilitating notice to

potential plaintiffs who had not yet filed written consents to join).

In April 1990, notice of the pendency of this action was circulated to Ho

La Roche's former employees.  In response, within the time permitted by the distric

court's order but after the two year statute of limitations on their individual act

had expired, another 102 persons filed consents to join Sperling's representative a

In September 1991, Sperling asked the district court to hold that these 102 consent

timely filed because the complaint in the representative action legally tolled the

of limitations under ADEA.[0]  The district court referred the matter to a Special Ma

The Special Master recommended granting Sperling's motion to join or incorporate in

opt-in class the 102 persons who filed consents in accordance with the procedure th

district court established in its order after the statute would have run on their

individual actions.

The district court adopted the Special Master's recommendation and grante

Sperling's motion for legal tolling. See Sperling, 145 F.R.D. at 366.  It concluded

"[a]nalysis of the statutory scheme of ADEA, the existing case law, and the policie

goals underlying class actions and statutes of limitations, persuades me to find th

best resolution of this issue is that the statute of limitations is tolled in ADEA

[0]At the time Sperling filed this motion, the issue of the availability of legal tol
under the ADEA was before this Court in Mershon v. Elastic Stop Nut Div. of Harvard
Indus., Inc., No. 90-5597 (3d Cir. 1991) (order dismissing appeal as moot).  The pa
in Sperling agreed to defer further proceedings until decision of this Court.  Both
Sperling and Hoffmann-La Roche had filed briefs as amicus curiae in Mershon. After
heard oral argument in Mershon, but before we decided the case, the parties in Mers
reached a settlement and we dismissed the appeal as moot.

actions." <u>Id.</u> at 360.  It rejected Hoffmann-La Roche's argument that section 7 of t

Portal-to-Portal Act[0] was implicitly incorporated into unamended section 7(e) of AD

along with section 6 of the Portal-to-Portal Act's incorporation.  Instead, the dis

court reasoned that Congress intended to incorporate only certain provisions of sec

16(b) of FLSA, as amended by the Portal-to-Portal Act, into ADEA.  <u>Id.</u> at 361.  Sec

of the Portal-to-Portal Act[0] was expressly incorporated while section 7 of that Act

not.  <u>Id.</u>

---

[0]Section 7 reads:

> In determining when an action is commenced for the purposes of
> section 255 of this title, an action . . . under the Fair Labor
> Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], . . .
> shall be considered to be commenced on the date when the complaint is
> filed; except that in the case of a collective or class action
> instituted under the Fair Labor Standards Act of 1938, as amended,
> . . . it shall be considered to be commenced in the case of any
> individual claimant--
>
> > (a)    on the date when the complaint is filed, if
> > he is specifically named as a party plaintiff in the
> > complaint and his written consent to become a party
> > plaintiff is filed on such date in the court in which the
> > action is brought; or
>
> > (b)    if such written consent was not so filed or
> > if his name did not so appear--on the subsequent date on
> > which such written consent is filed in the court in which
> > the action was commenced.

29 U.S.C.A. § 256.
[0]Section 6 of the Portal-to-Portal Act, expressly incorporated into ADEA until 1991
reads, in pertinent part:

> Any action commenced . . . to enforce any cause of action for
> unpaid minimum wages, unpaid overtime compensation, or liquidated
> damages, under the Fair Labor Standards Act of 1938, as amended [29
> U.S.C.A. § 201 et seq.], . . .--
>
> > (a)    if the cause of action accrues on or after
> > May 14, 1947--may be commenced within two years after the cause
> > of action accrued, and every such action shall be forever barred
> > unless commenced within two years after the cause of action
> > accrued, except that a cause of action arising out of a willful

9

The district court did not base its decision solely on the selective incorporation theory. It also recognized that ADEA

> does share some procedural similarities with the FLSA, [but] it also shares many similarities with Title VII, which is governed by Rule 23. . . . Thus, it is reasonable that Congress intended the tolling rule applicable to Title VII cases to apply, rather than the non-tolling rule of Section 256 of the FLSA. Courts have looked to and applied other Title VII procedural aspects to ADEA class actions.

Id. (citations omitted). According to the district court, legal tolling in ADEA ca consistent with the goals of any statute of limitations--to provide notice to defer of claims against them and to discourage plaintiffs from sleeping on their rights. 364. In addition, the district court described some of the practical problems that ensue if tolling were not permitted. Sperling filed the complaint on May 7, 1985, months after the alleged discriminatory act occurred. The district court did not g Sperling's motion for court-authorized service of notice until January 1988, almost years after the alleged unlawful conduct. Under Hoffmann-La Roche's interpretation statute of limitations would have expired before the court had authorized service of notice on putative members of the opt-in class. Id. at 365.

After the district court handed down its order, Hoffmann-La Roche moved t certify the legal tolling issue for interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b). The district court granted permission for an interlocutory appeal and a motions panel of this Court granted Hoffmann-La Roche's petition for permission to pursuant to 28 U.S.C.A. § 1292(b).

II.

---

violation may be commenced within three years after the cause of action accrued.

29 U.S.C.A. § 255.

This case is a private, representative action authorized by section 7(b)
ADEA. The district court had subject matter jurisdiction under 28 U.S.C.A. § 1331
1993). We have appellate jurisdiction over the district court's order granting Sper
motion for legal tolling under 28 U.S.C.A. § 1292(b).[0]

Whether a consent to opt-in must be filed by a class member who wishes to
participate in an ADEA class action within the same time limit he or she has to fil
individual complaint is a question of law. Accordingly, our review of the district
court's decision is plenary. See Gavalik v. Continental Can Co., 812 F.2d 834, 850
Cir.), cert. denied, 484 U.S. 979 (1987); Chrysler Credit Corp. v. First Nat'l Bank
Trust Co., 746 F.2d 200, 202 (3d Cir. 1984) (per curiam). As stated earlier, the c
presented is also a matter of first impression in this Court.

## III.

Our holding that ADEA's statute of limitations is tolled for eligible cla
members by the initial filing of a representative complaint, as long as the represe
nature of the action is clear on the complaint's face, is foreshadowed by our opini

---

[0]Section 1292(b), which gives us jurisdiction over interlocutory appeals, provides
pertinent part:

> [A] district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order
> involves a controlling question of law as to which there is
> substantial ground for difference of opinion and that an immediate
> appeal from the order may materially advance the ultimate termination
> of the litigation, he shall so state in writing in such order. The
> Court of Appeals which would have jurisdiction of an appeal of such
> action may thereupon, in its discretion, permit an appeal to be taken
> from such order, if application is made to it within ten days after
> the entry of the order: Provided, however, That application for an
> appeal hereunder shall not stay proceedings in the district court
> unless the district judge or the Court of Appeals or a judge thereof
> shall so order.

28 U.S.C.A. § 1292(b) (emphasis in original).

<u>Lusardi v. Lechner</u>, 855 F.2d 1062, 1077-78 (3d Cir. 1988).  There we listed with ap

decisions in other courts that had allowed individuals who had not filed timely

administrative charges to participate in an ongoing representative suit.[0]

## A.

In ADEA, Congress borrowed portions of many other statutes.  It incorpora

parts of FLSA, parts of the Portal-to-Portal Act, and parts of Title VII of the Civ

Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1981 & Supp. 1993).  Each

these acts employs one of two types of class actions as aids to enforcement:  the c

representative action permitted by Federal Rule of Civil Procedure 23(b)(3) and the

representative action authorized by section 16(b) of FLSA. Analysis of the district

court's order permitting persons to opt-in after their individual actions could hav

barred by limitations requires a brief review of these two types of class actions.

The opt-in class action that section 16(b) of FLSA permits has its antece

in the old equity Bill of Peace, a device Chancellors once used to join numerous pa

with common interests so that their common claims could be disposed of efficiently

suit.  <u>See</u> Ellen E. Sward, <u>Values, Ideology and the Evolution of the Adversary Syst</u>

Ind. L.J. 301, 331 (1989).  In its inception, the Bill of Peace was a response to t

---

[0]It is also in accord with <u>Anderson v. Montgomery Ward & Co.</u>, 852 F.2d 1008, 1018-1
Cir. 1988) (an initial representative complaint which names all plaintiffs is suffi
for statute of limitations purposes and those named plaintiffs need not file consen
<u>Kloos v. Carter-Day Co.</u>, 799 F.2d 397, 400 (8th Cir. 1986) (statutory purposes of a
for conciliation and providing the employer with notice of charges against it are
satisfied even if not every opt-in plaintiff has filed an administrative charge, so
as charges "fairly anticipate class claims"); <u>Mistretta v. Sandia Corp.</u>, 639 F.2d 5
(10th Cir. 1980) ("'equitable tolling' doctrine [is] in keeping with the congressio
purpose of ADEA . . ."); <u>EEOC v. Gilbarco, Inc.</u>, 615 F.2d 985, 987 (4th Cir. 1980)
(holding that age discrimination action is commenced by filing of initial complaint
regardless of whether all participants are listed); <u>Bean v. Crocker Nat'l Bank</u>, 600
754, 759-60 (9th Cir. 1979) (allowing post-deadline filing by additional plaintiffs
representative complaint put employer on notice "that the discrimination charges
encompassed a pattern of unlawful conduct transcending an isolated individual clai
that they should act accordingly").

strict limits the common law placed on joinder of parties, though only the represen[tative]

parties were named. The modern opt-out class action also evolved out of the joinde[r]

mechanism of the old Bill of Peace, but it no longer has any easily perceptible tra[ce of]

its antecedents in permissive joinder. The opt-out class action is governed by Fed[eral]

Rule of Civil Procedure 23(b)(3), which differs in important respects from the opt-[in]

class permitted by section 16(b) of FLSA. See, e.g., Fed. R. Civ. P. 23(c)(3) (a cl[ass]

action judgment is binding on all class members "who have not requested exclusion")[.]

Thus, if a person does not wish to be bound by an order in a Rule 23 class action h[e must]

specifically ask to be excluded.

While ADEA's opt-in class action is not governed by Federal Rule of Civil

Procedure 23(b)(3), class actions brought under Title VII are governed by the opt-o[ut]

provisions of Rule 23. See Edwards v. Boeing Vertol Co., 717 F.2d 761, 765-66 (3d [Cir.]

1983), vacated, 468 U.S. 1201, reinstated, 750 F.2d 13 (3d Cir. 1984). The law on [statute of]

limitations in Rule 23 actions is settled. In American Pipe & Construction Co. v. [Utah,]

414 U.S. 538 (1974), the Supreme Court recognized that the claims of all class memb[ers]

under Rule 23 are protected by the filing of an original, timely complaint. See Am[erican]

Pipe, 414 U.S. at 551. The complaint in American Pipe alleged a violation of sectio[n 1 of]

the Sherman Act, 15 U.S.C.A. § 1 (West Supp. 1994). The Supreme Court held individ[ual]

satisfaction of the statute of limitations is not required in Rule 23 class actions[,]

because:

> [T]he difficulties and potential for unfairness which, in part,
> convinced some courts to require individualized satisfaction of the
> statute of limitations by each member of the class, have been
> eliminated, and there remain no conceptual or practical obstacles in
> the path of holding that the filing of a timely class action complaint
> commences the action for all members of the class as subsequently
> determined. Whatever the merit in the conclusion that one seeking to
> join a class after the running of the statutory period asserts a
> "separate cause of action" which must individually meet the timeliness
> requirements, such a concept is simply inconsistent with Rule 23 as
> presently drafted. A federal class action is no longer "an invitation
> to joinder" but a truly representative suit designed to avoid, rather
> than encourage, unnecessary filing of repetitious papers and motions.

13

American Pipe, 414 U.S. at 550 (footnote and citation omitted). The rule tolling th[e] statute of limitations when the class action complaint is filed is commonly referre[d] the "American Pipe rule." See Korwek v. Hunt, 827 F.2d 874, 878 (2d Cir. 1987); Fe[rnandez?] v. Chardon, 681 F.2d 42, 48 (1st Cir. 1982), aff'd, 462 U.S. 650 (1983).

When class relief is sought pursuant to section 16(b) of FLSA, as modifie[d] section 7 of the Portal-to-Portal Act, the rule governing the timeliness of an opt-[in] class member's consent to join a class is different. By section 7 of the Portal-to[-Portal] Act, all class members who seek relief under FLSA must submit their affidavits of c[onsent] before the statute of limitations applying to their individual claims has run. In [the] early case of Gibbons v. Equitable Life Assurance Society of United States, 173 F.2[d] 339 (2d Cir. 1949), the court stated "[t]he terms of the Portal-to-Portal Act indic[ate] that one of its aims was to prevent the assertion of surprise claims by unnamed emp[loyees] at a time when the statute of limitations would otherwise have run." Id.; see also [29] U.S.C.A. §§ 255-256.

The restrictive provisions of the Portal-to-Portal Act were thought neces[sary to] control what Congress viewed as the virtually unlimited liability generated by the [United] States Supreme Court's decision in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 68[0] (1946). In Mt. Clemens, the Supreme Court held an employer was responsible for pay[ing an] employee from "portal-to-portal," that is, from the time he arrived at work until t[he time] he left, including the time it took for him to get to and from the time clock to hi[s] actual job site. Id. at 690-92. The Supreme Court's decision, which was unexpecte[d by] industry, led employers to fear huge damages because FLSA had no express statute of [] limitations. The flood of claims Mt. Clemens was thought likely to generate also c[aused] the government to fear large enforcement costs. Congress's reaction to Mt. Clemens [was] the Portal-to-Portal Act. Its legislative history reflects these concerns:

> The uncertainty of the present situation with its tremendous threat is seriously interfering with efforts to return to a peacetime economy with full and efficient production; it has clogged the courts with new and expensive litigation; it interferes with the right of collective bargaining; it threatens to add greatly to the cost of goods and services bought by the Government, while at the same time reducing the Federal revenue; it is a serious burden on interstate commerce.

House Comm. on the Judiciary, Portal-to-Portal Act of 1947, H.R. Rep. No. 71, 80th 1st Sess., reprinted in 1947 U.S.C.C.A.N. 1029, 1034. Thus, when Congress enacted Portal-to-Portal Act of 1947, one year after Mt. Clemens, it severely restricted th claims an employee could make for back wages by various means, including a strict s of limitations.

The representative mechanism Congress created for use in age discriminati cases differs from both the Rule 23 class action used in Title VII and the more restrictive representative action FLSA permits. These differences seem clear from language of ADEA as well as its legislative history.

Congress did not incorporate all the class action provisions of FLSA and Portal-to-Portal Act into ADEA, nor did it add an age discrimination cause of actio either FLSA or Title VII. Indeed, Congress declined to adopt a bill that would hav amended FLSA to bring age discrimination within its prohibitions. See Levine v. Br 700 F. Supp. 949, 952 (N.D. Ill. 1988) (quoting S. 788, 90th Cong., 1st Sess. (1967 reprinted in, 113 Cong. Rec. 2199 (1967)). Instead, Congress pieced ADEA together selectively incorporating into it specific parts both of Title VII and FLSA. ADEA offspring of these two parents, but the mixture of traits it has inherited from eac it its own individuality.

Congress was precise in selecting the portions of other acts that were to comprise ADEA. Only specific subsections of FLSA, the Portal-to-Portal Act and Tit were incorporated. Among those left out was section 7 of the Portal-to-Portal Act,

15

the restrictive clauses which Congress felt was needed to stem the tide of litigati[on]

feared would otherwise follow the decision in <u>Mt. Clemens</u>.

The opt-out class mechanism of Rule 23(b)(3) and (c)(2) was also excluded [by]

Congress's incorporation of the opt-in provisions of section 16(b) of FLSA.  Thus, [age]

discrimination plaintiffs must affirmatively express their desire to join a pending

representative action.  The converse is true under Rule 23(c)(2).  Members of a Rul[e]

23(b)(3) class are automatically included and remain so unless they make a timely e[lection]

to opt-out.[0]  On the other hand, "the prohibitions of the [ADEA] were derived <u>in ha[ec]</u>

<u>verba</u> from Title VII."  <u>Lorillard v. Pons</u>, 434 U.S. 575, 584 (1978).

We see nothing in either the unamended statutory text or the legislative [history]

of ADEA that indicates we should incorporate section 7 of the Portal-to-Portal Act'[s]

restrictions into it.  Indeed, we think this would be inconsistent with both the Ac[t's]

text, as it appeared prior to 1991, and Congress's intent.  <u>Cf.</u> <u>Lorillard</u>, 434 U.S.

581-82.  We are not persuaded to the contrary by <u>O'Connell v. Champion Internationa[l]</u>

<u>Corp.</u>, 812 F.2d 393 (8th Cir. 1987).  There the court, considering only Federal Rul[e of]

Civil Procedure 15's relation-back doctrine, stated:
> The District Court held, and we agree, that the relation-back doctrine
> must yield in ADEA cases to the specific provision of 29 U.S.C. § 256
> that an action may be commenced only by the filing of a complaint by
> the named individual, or by his affirmatively opting into a previously
> commenced class action.

<u>Id.</u> at 394.  The <u>O'Connell</u> court did not expand on its reasoning or consider the

possibility that Congress's refusal to incorporate section 7 of the Portal-to-Porta[l Act]

into ADEA was an indication that ADEA's statute of limitations, taken verbatim fro[m]

---

[0]If the original version of Rule 23, with its "spurious" class action, were still i[n]
effect, plaintiffs would still have to opt-in to be bound by the decision.  <u>See</u> Fed[. R.]
Civ. P. 23 advisory committee's notes to 1966 amendment; <u>see</u> <u>also</u> Sward, <u>supra</u>, at [ ]

16

section 6 of the Portal-to-Portal Act, should be tolled for the benefit of persons

opt-in to a timely filed representative action.[0]

        We are bound by the intent of Congress, as we perceive it.  In deciding t

borrow parts of FLSA's statute of limitations for ADEA, Congress refused to carry o

section 7 of the Portal-to-Portal Act requiring class members who desire to opt-in

representative actions brought under FLSA to do so within the time limits imposed o

individual claims.  Instead, it chose to incorporate only section 6's limitations o

individual claims. Its incorporation of selected provisions into section 7(b) of AD

indicates that Congress deliberately left out those provisions not incorporated.  S

Morelock v. NCR Corp., 586 F.2d 1096, 1103 (6th Cir. 1978) (noting that 29 U.S.C.A.

is not applicable to age discrimination suits because Congress did not incorporate

ADEA), cert. denied, 441 U.S. 906 (1979). Indeed, the decision we make today strike

a fairly routine application of the traditional rule of statutory construction pith

captured in the Latin maxim expressio unius est exclusio alterius.[0]  Thus, as the C

explained in Continental Casualty Co. v. United States, 314 U.S. 527, 533 (1942),

"[g]enerally speaking a 'legislative affirmative description' implies denial of the

described powers."  Id.  This maxim takes on more life in ADEA because of the thoro

legislative understanding of the law in this area when Congress enacted ADEA.  As t

Supreme Court stated:

> [I]n enacting the ADEA, Congress exhibited both a detailed knowledge
> of the FLSA provisions and their judicial interpretation and a
> willingness to depart from those provisions regarded as undesirable or
> inappropriate for incorporation.

---

[0]The rationale of O'Connell may be inconsistent with that of the same court in Kloo
Carter-Day Co., 799 F.2d at 397. Kloos, however, dealt with the sufficiency of an
administrative charge to place an employer on notice that he was dealing with a
representative action and not specifically with application of the statute of limit
governing court actions to persons who opt-in to a representative action in the dis
court.

[0]Translated, the maxim reads:  "expression of one thing is the exclusion of another
Black's Law Dictionary 521 (5th ed. 1979).

17

<u>Lorillard</u>, 434 U.S. at 581 (Congress intended trial by jury to be available in priv

actions under ADEA).

In <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111 (1985), the Supre

Court precluded judges from reading into ADEA sections of FLSA Congress had left ou

There, the Supreme Court refused to imply incorporation of FLSA's limits on liquida

damages into ADEA absent specific incorporation by Congress. <u>Id.</u> at 128 n.22. Her

two and three year statutes of limitations in section 6 of the Portal-to-Portal Act

been expressly incorporated into ADEA, but section 7 of the Portal-to-Portal Act,

requiring persons desiring to opt-in to a representative action to do so within the

limit FLSA imposes on individual actions, was never expressly incorporated. Thus,

selective incorporation theory, we must reject Hoffmann-La Roche's argument that le

tolling would be contrary to the intent of Congress.

Moreover, the special problems of open-ended unanticipated claims that <u>Mt</u>

<u>Clemens</u> created are not present under ADEA so long as both the charge and the compl

put the employer on notice that class relief will be sought.[0]


B.

An opt-in class action under ADEA is more than a device for the permissiv

joinder of parties. Hoffmann-La Roche's argument that the opt-in procedure of sect

16(b) of FLSA is a substitute for permissive intervention and therefore that Federa

of Civil Procedure 24(b) provides an appropriate analogy for determination of the

timeliness of a consent to a representative action under ADEA is not persuasive.

Hoffmann-La Roche's argument that Rule 24 applies is only a variation on the equall

unpersuasive argument that incorporation of section 16(b) of FLSA into ADEA incorpo

---

[0]For a comprehensive critique of <u>Mt. Clemens</u> and a full consideration of the proble
raises, <u>see</u> H. Hart & A. Sacks, <u>The Legal Process: Basic Problems in the Making an
Application of Law</u> 1296-1301 (tent. ed. 1958).

18

Rule 20's rules on permissive joinder.  We rejected this analogy to permissive join

under Rule 20 in our earlier decision in this case.  See Sperling, 862 F.2d at 446.

we stated "that [§ 16(b)] does more than create the right of permissive joinder alr

provided by Rule 20 of the Federal Rules of Civil Procedure."  Id. (citation omitte

also Lusardi, 855 F.2d at 1078 (rejecting section 16(b)'s analogy to either permiss

joinder or intervention).

We think a representative action brought under ADEA is commenced on behal

all consenting class members when the original representative complaint is filed.

Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the cour

It has already been firmly settled, in the context of Rule 23 class actions, that "

tolling rule for class actions is not inconsistent with the purposes served by stat

limitations."  See Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352 (1983).  We

application of principles of legal tolling to a class action for age discriminatior

also consistent with the three basic purposes a statute of limitations serves.  The

first a "practical and pragmatic device[] to spare the courts from litigation of st

claims, and the citizen from being put to his defense after memories have faded, wi

have died or disappeared, and evidence has been lost." Mills v. Habluetzel, 456 U.S

101 n.9 (1982) (quoting Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314 (1945)).

as the initial complaint is timely, a claim, by definition, is not stale.  Secondly

"[l]imitations periods are intended to put defendants on notice of adverse claims."

Crown, Cork & Seal, 462 U.S. at 352.  Finally, limitations periods "prevent plainti

from sleeping on their rights."  Id.  When filed within the statute of limitations,

original representative complaint, as long as it shows on its face its representati

nature, tolls the running of the statute of limitations.  It provides an employer

reasonable notice of the claim for class relief.[0]  When a complaint clearly indicat

---

[0]We do not think this rationale is weakened by the 1991 amendment to section 626(e)
ADEA.  The amendment deleted the reference to section 6 of the Portal-to-Portal Act

19

claim's representative nature, the employer is put on notice that it faces a broade

potentially more serious problem than an individual action would create.

Rule 23(d) then allows a district court to prevent abusive tolling extens

through its case management power.[0] See Sperling, 110 S. Ct. at 486 (noting that "o

ADEA action is filed, the court has a managerial responsibility to oversee the joir

additional parties to assure that the task is accomplished in an efficient and prop

way"). Tolling the statute of limitations once the representative complaint is fil

allows distribution of notice to potential plaintiffs to proceed while the question

class certification is pending.[0] Potential plaintiffs are made aware of their right

the district court, pursuant to its case management powers, promptly sets a reasona

cut-off date for closing the opt-in class, the scope of the suit is limited and mad

to the defendant employer within a reasonable time after the claim seeking class re

---

instead provided a 90-day period, running from EEOC's dismissal of charges, in whic employees must file suit. Under the unamended version of ADEA, employees had two y from the date of the alleged discriminatory conduct to file suit, regardless of whe EEOC had yet ruled on their administrative charges. The purpose of the amendment w restore and strengthen civil rights laws that ban discrimination in employment." H Rep. No. 102-40(I), 102d Cong., 1st Sess., at 1 (1991), reprinted in 1991 U.S.C.C.A 549, 549. Congress passed it because EEOC was generally unable to act on all age discrimination claims before the statute of limitations expired. As a result, thou of age discrimination charges were lost without consideration of their merits. See Rep. No. 102-40(II), 102d Cong., 1st Sess., at 41 (1991), reprinted in 1991 U.S.C.0 694, 734; H.R. Rep. No. 102-1093, 102d Cong., 2d Sess. (1992). The 1991 amendment meant to shorten the statute of limitations period.

[0]Again, we think analogy to Federal Rule of Civil Procedure 23(d) is appropriate. provides, in pertinent part:

> In the conduct of actions . . . the court may make appropriate orders:
> . . . (2) requiring, for the protection of the members of the class or
> otherwise for the fair conduct of the action, that notice be given in
> such manner as the court may direct to some or all of the members of
> any step in the action, or of the proposed extent of the judgment, or
> of the opportunity of members to signify whether they consider the
> representation fair and adequate, to intervene and present claims or
> defenses, or otherwise to come into the action; . . . (5) dealing with
> similar procedural matters.

[0]Because employers generally have business records containing the vital statistics work histories of their past employees, they are in the best position to define the limits of class size.

filed.  Such a controlled tolling of ADEA's statute of limitations seems to us to accomplish fully the intent of Congress without inflicting any untoward inequity on employer who knows before the statute runs that he is dealing with a representative action.

IV.

Accordingly, in answer to the question certified, we hold that the filing original complaint tolled the applicable two year statute of limitations for those plaintiffs who joined the action after the limitations period for their individual had run.  Section 7 of the Portal-to-Portal Act cannot be used to limit the time wi which persons "similarly situated" to a representative plaintiff who has filed a ti complaint for age discrimination may opt-in to an ADEA representative class action. tolling is consistent in this case with the purposes behind a statute of limitation The district court's order granting Sperling's motion for legal tolling will be aff and the case remanded to it for further proceedings consistent with this opinion.